598 S.E.2d 288

**Thomas E. POPE, as Solicitor, Sixteenth Judicial Circuit, Appellant,**

**v.**

**Willie Edward GORDON, Jr., and Twenty–Five Thousand Three Hundred Forty–One and 09/100's (25,341.09) Dollars in U.S. Currency; One 1984 GMC Pickup Truck; Two Motorola Cellular Phones (Serial Numbers; SUF1857M and SUG1049B230L012QT16WF1); and One Hundred Twenty–Eight & no/100s (128.00) Dollars in U.S. Currency, Respondent.**

No. 3780.

Court of Appeals of South Carolina.

Submitted March 11, 2004.

Decided April 19, 2004.

Rehearing Denied June 25, 2004.

Kristie Hannah Jordan, of York, for Appellant.

Leland Bland Greeley, of Rock Hill, for Respondent.

CURETON, A.J.

The State brought this civil forfeiture action pursuant to section 44–53–520(a) of the South Carolina Code of Laws.[1] The

---

1. This statute provides in pertinent part:

    (a) The following are subject to forfeiture:

    . . .

    (4) All property, both real and personal, which in any manner is knowingly used to facilitate production, manufacturing, distribution,

State appeals the circuit court's order returning property to Willie Edward Gordon, Jr. ("Gordon"). We affirm in part, reverse in part, and remand.[2]

## FACTS

This forfeiture action arose from the arrest of Gordon in September of 1996 for trafficking in crack cocaine. At the time of his arrest, Gordon was the owner of Gordon's Car Cleaning Service, an unincorporated business whose principal venture was the cleaning and detailing of automobiles for car dealerships and individuals.

Precipitating Gordon's 1996 arrest was an investigation by agents with the Rock Hill Police Department ("Department").

---

sale, importation, exportation, or trafficking in various controlled substances as defined in this article;

. . .

(6) all conveyances including ... motor vehicles ... which are used or intended for use unlawfully to conceal, contain, or transport or facilitate the unlawful concealment, possession, containment, ... or transportation of controlled substances ... except as otherwise provided, must be forfeited to the State. No motor vehicle may be forfeited to the State under this item unless it is used, intended for use, or in any manner facilitates a violation of Section 44–53–370(a), involving at least ... more than ten grains of crack....

(7) all property including, but not limited to, monies ... or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, and all proceeds including, but not limited to, monies, and real and personal property traceable to any exchange;

(8) all monies seized in close proximity to forfeitable controlled substances ... or in close proximity to forfeitable records of the ... distribution of controlled substances and all monies seized at the time of arrest or search involving violation of this article. If the person from whom the monies were taken can establish to the satisfaction of a court of competent jurisdiction that the monies seized are not products of illegal acts, the monies must be returned pursuant to court order.

S.C.Code Ann. § 44–53–520(a) (2002 & Supp.2003). Although we note this case arose in 1996, we cite to the most current version of the statute. Subsection (a)(6) of section 44–53–520 was amended effective May 20, 2002. The change, however, does not affect the merits of this appeal.

2. This case was originally argued before a panel of this Court consisting of Judge Goolsby, Judge Connor, and Judge Anderson. Due to the untimely passing of Judge Connor, Judge Cureton was substituted as a member of the panel. Rather than re-argue the case, the parties agreed

In the early part of 1994, agents received information from confidential informants that Gordon was involved in selling crack cocaine. Acting on its suspicions, the Department conducted a controlled buy of illegal drugs from Gordon on January 27, 1994. As a result, the Department obtained a search warrant on February 3, 1994, for Gordon's home and recovered crack cocaine and marijuana. While conducting an additional search on February 12, 1994, officers recovered crack cocaine in a well house near Gordon's residence. Gordon pleaded guilty to possession of marijuana for the incident that occurred on February 3, 1994.

In September of 1996, the Department began another investigation of Gordon following the arrest of a low-level crack dealer who identified Gordon as her supplier. She also identified another dealer, Tommy Rhinehart ("Rhinehart"). On September 23, 1996, Rhinehart agreed to cooperate with the Department after agents executed a search warrant at his residence during which they recovered two bags of crack cocaine, each containing approximately 10 grams, and a pill bottle containing 1.8 grams. Rhinehart informed the agents that Gordon had given him the drugs just prior to the search. According to Rhinehart, he retrieved the drugs from the door of Gordon's pickup truck where Gordon indicated he had hidden them.

The next day, Rhinehart met with Gordon to discuss future transactions. During the course of the conversation, Rhinehart told Gordon that he had "flushed" the crack cocaine during the Department's search of his residence. On September 26, 1996, Gordon and his nephew, Spencer, gave Rhinehart another bag of crack cocaine. Spencer stayed with Rhinehart while he sold some of the crack cocaine. On September 27, 1996, Rhinehart met with agents and turned over the proceeds from the sale and the remaining crack cocaine. At that time, the agents gave Rhinehart $500 in marked money to pay Gordon for the crack cocaine that he had "fronted" him. In a recorded conversation, Rhinehart set up another transaction with Gordon. Gordon indicated that he needed to contact Spencer. Rhinehart was then instructed to meet Spencer at

---

to submit the case to the new panel based on the record and their briefs.

Gordon's car wash. At the car wash, Spencer gave Rhinehart two bags of crack cocaine, weighing 9.4 grams and 9.8 grams respectively, and collected $500 for a previous transaction. Rhinehart then left, met with the agents, and turned over the crack cocaine.

On September 30, 1996, Rhinehart paged Gordon to arrange a meeting time so that he could pay for the two additional bags of crack cocaine. The agents gave Rhinehart $1,000 in marked money and equipped him with a surveillance wire. Rhinehart met with Spencer at a designated location. He then gave Spencer the money received from the sale of the crack cocaine that was purchased earlier from Gordon. Spencer left and told Rhinehart he would return with more crack cocaine. Spencer met Gordon, who was driving the pickup truck, at the car wash. Spencer left the car wash, drove to NationsBank, and made a deposit. Shortly thereafter, agents arrested Spencer and searched him. The agents found a bank deposit receipt for account number 790167308, the business account for Gordon's car wash. The balance of the account was $22,209.85, which included the deposit.

During the same time period, Gordon was arrested while driving his pickup truck. He was found to be in possession of two cellular phones as well as $1,584 in cash, $880 of which was law enforcement funds given to Spencer earlier by Rhinehart. Pursuant to this arrest, the State seized the following property: the NationsBank operating account of Gordon's car wash business, $22,209.85 plus $726.24 from the payroll account; the $1,584 in cash; the pickup truck; and two cellular phones.

The forfeiture action also included seizures of cash in the amount of $821 and $128. On September 29, 1996, agents seized $821 in cash from Gordon when he was arrested on unrelated warrants during the search of another person's residence. On October 5, 1996, Gordon was arrested for obstruction of justice. While Rhinehart was wearing a surveillance wire, Gordon offered him $5,000 to leave town and not testify against him. At the time of the arrest, the agents seized $128 in cash from Gordon.

Ultimately, Gordon was convicted of trafficking in crack cocaine and sentenced to thirty years imprisonment and payment of a $50,000 fine.

The State filed a civil action seeking to confirm the seizure and forfeiture of Gordon's property. During the hearing, the State offered Officers Chuck Grant and Rodney Pickel of the Rock Hill Police Department, as well as Rhinehart, as witnesses to the above-outlined investigation. The State also presented several witnesses who testified regarding Gordon's finances. In addition to this testimony, the State presented Gordon's voluminous NationsBank records into evidence.

Christine Rogers, an employee of a property management company, testified she became acquainted with Gordon in 1995 or 1996 when she rented him an apartment in Rock Hill. In 1996, Gordon entered into a commercial lease agreement for the purchase of property. The terms of the agreement required Gordon to provide a $6,000 down payment and then a $750 monthly lease payment. According to Rogers, Gordon paid cash for monthly rent for his apartment as well as the $6,000 down payment.

John Comer, a South Carolina Department of Revenue employee, testified the Department had no tax records for Gordon individually or for the car wash during the years of 1995 or 1996. Margaret Parsons, an accountant, began assisting Gordon with his finances beginning in May or June 1996. Based on her review of Gordon's finances, Parsons believed Gordon's expenses exceeded his business income and that the balance of the expenses was paid for in cash.

The circuit court ordered all of the seized property, with the exception of the $128 in cash, returned to Gordon. The court reasoned the State had failed to meet its "burden of initially showing probable cause of a nexus with illegal drug activity of all the property sought to be forfeited." The court excluded the $128, finding it was "marked money" that was seized during Gordon's first arrest.

The State filed a motion for reconsideration. After a hearing, the court denied this motion. The State appeals.

## STANDARD OF REVIEW

"An action for forfeiture of property is a civil action at law." *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck (VIN # JM2UF1132N0294812)*, 330 S.C. 371, 373, 498 S.E.2d 894, 895 (Ct.App.1998). In a non-jury action at law, the trial judge's findings of fact have the same force and effect as a jury verdict unless he or she committed some error of law leading to an erroneous conclusion or unless the evidence is reasonably susceptible of the opposite conclusion only. *Hiott v. Guar. Nat'l Ins. Co.*, 329 S.C. 522, 528–29, 496 S.E.2d 417, 421 (Ct.App.1997); *see Townes Assocs. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976) ("In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings.").

## DISCUSSION

### I.

#### A.

The State argues the circuit court erred in returning the seized money to Gordon. Specifically, the State contends the court committed an error of law by requiring the State to "directly trace the seized money to a specific drug transaction." The State believes, in light of the totality of the circumstances, it met its burden to establish probable cause that the NationsBank accounts were used in furtherance of Gordon's drug trafficking.[3]

Based on our review of the court's order, we believe the court properly considered the requirements of the forfeiture statute. In its order, the court found "for moneys taken, the State must present evidence that the money is traceable to an

---

**3.** With respect to this issue, we note the State's brief is primarily devoted to an argument concerning the NationsBank accounts. As such, our analysis is confined to this particular item of property. To the extent the State appears to challenge the return of the cash seized from Gordon's person, we will discuss that issue separately. Additionally, it does not appear the State is appealing the two cellular phones given they were of negligible value.

exchange involving controlled substances. The State presented no evidence whatsoever that the moneys in the account were from drug transactions." This holding is precisely what section 44–53–520(a)(7) requires for a forfeiture of monies.

Section 44–53–520(a)(7) provides:

all property including, but not limited to, monies, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, and all proceeds including, but not limited to, monies, and real and personal property **traceable to any [illegal drug] exchange.**

S.C.Code Ann. § 44–53–520(a)(7) (2002) (emphasis added). In order to analyze this case, we are faced with determining the exactness required to prove whether the bank accounts are "traceable to any exchange." Thus, we must employ the rules of statutory construction.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hawkins v. Bruno Yacht Sales, Inc.,* 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it reasonably can be discovered in the language used, and the language must be construed in the light of the intended purpose of the statute." *City of Sumter Police Dep't,* 330 S.C. at 375, 498 S.E.2d at 896. If a statute's language is plain, unambiguous, and conveys a clear meaning "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).

An action for forfeiture is a civil *in rem* action at law that is, by its nature, a penal action that must be strictly construed. *See Ducworth v. Neely,* 319 S.C. 158, 162, 459 S.E.2d 896, 899 (Ct.App.1995) (strictly construing the term "knowledge" to mean "actual knowledge"). Furthermore, *"in rem* forfeiture statutes must be interpreted in light of the evil sought to be remedied and in a manner that is consistent with the statute's purpose." *Id.* at 163, 459 S.E.2d at 899. Accordingly, we must apply a strict definition of the disputed text of the statute which best fulfills the law's purpose to remedy a particular evil.

■ "The purpose of a forfeiture hearing is to confirm that the state had probable cause to seize the property forfeited." *Medlock v. One 1985 Jeep Cherokee VIN 1JCWB782FT129001*, 322 S.C. 127, 131, 470 S.E.2d 373, 376 (1996). The State has the "initial burden of demonstrating 'probable cause for the belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by statute.'" *United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir.1990)(quoting *Boas v. Smith*, 786 F.2d 605, 609 (4th Cir. 1986)). "If probable cause is shown, the burden then shifts to the owner to prove that he or she 'was not a consenting party to, or privy to, or did not have knowledge of, the use of the property which made it subject to seizure and forfeiture.'" *Medlock*, 322 S.C. at 131, 470 S.E.2d at 376 (quoting S.C.Code Ann. § 44–53–586(b)(1) (Supp.1994)). "Section 44–53–586(b) specifically places the burden of proof on the property owner to show innocent ownership by a preponderance of the evidence, showing legislative intent to place the burden of proving innocence on the property owner." *Id.*

■ " 'Probable cause' for the purpose of forfeiture proceedings is the same standard used in search and seizure cases." *Thomas*, 913 F.2d at 1114. A determination of probable cause requires the magistrate to analyze the totality of the circumstances, which means his task is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Weston*, 329 S.C. 287, 290–91, 494 S.E.2d 801, 802–03 (1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *State v. Martin*, 347 S.C. 522, 527, 556 S.E.2d 706, 709 (Ct.App.2001) ("A 'totality of the circumstances' test is applicable in determining whether sufficient probable cause exists to issue a search warrant.").

Because our research reveals no South Carolina case that is directly on point, we agree with the State that federal law is instructive in deciding this case. In other forfeiture cases, our Supreme Court and this Court have consistently turned to the guidance of the federal courts, particularly decisions of the Fourth Circuit. *See, e.g., Medlock*, 322 S.C. at 132, 470 S.E.2d

at 377 (adopting "excessive fine test" set forth by Fourth Circuit Court of Appeals in *United States v. Chandler,* 36 F.3d 358 (4th Cir.1994), *cert. denied,* 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995)); *Condon v. One 1985 BMW, 4 Door, VIN # WBAAE6403F0704170,* 312 S.C. 431, 432, 440 S.E.2d 895, 896 (Ct.App.1994)(applying Fourth Circuit cases to determine whether seized vehicle facilitated the unlawful transportation of controlled substances under sections 44–53–520(a)(4), (a)(6)).

We are persuaded to consider *United States v. Thomas,* 913 F.2d 1111 (4th Cir.1990), a case where the Fourth Circuit Court of Appeals interpreted a federal statute that is similar to our state forfeiture statute.[4] The defendant in *Thomas* became the subject of a federal government drug investigation. In the course of the investigation, the officers conducted undercover drug buys at the defendant's business in Georgetown, South Carolina. Government officers also discovered Thomas had significant cash expenditures and had "unusual travel habits," which included numerous one-way airline tickets from Charleston, South Carolina to Miami, Florida. Ultimately, the investigation was concluded when the Immigration and Naturalization Service arrested Thomas for being an illegal alien. Subsequently, the federal government seized certain real and personal property that belonged to Thomas. After a forfeiture hearing, the district court ordered the return of the property to Thomas, finding the government had not shown probable cause for its belief that there was a substantial connection between the property to be forfeited and the illegal drug-related activities.

On appeal, the Fourth Circuit Court of Appeals reversed the district court, holding the totality of the facts demonstrated probable cause. *Id.* at 1117. The Court believed the district court took "too stringent a view of the legal standard

---

4. The federal statute, 21 U.S.C.A. § 881(a)(6) (1999 & Supp.2003), provides in relevant part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . , [and] all proceeds traceable to such an exchange. . . .

involved in establishing probable cause and too dismissive a view of its own factual findings." *Id.* at 1115. The Court characterized the district court's analysis as "[p]arsing evidence in isolation for a fatal flaw" which would defeat a finding of probable cause. In reaching this conclusion, the Court noted that " '[c]ircumstantial evidence of drug transactions is sufficient to support the establishment of probable cause in a forfeiture proceeding,' without showing a 'direct connection between the property subject to seizure and the illegal activity that renders the items forfeitable.' " *Id.* at 1117 (quoting *United States v. Edwards,* 885 F.2d 377, 390 (7th Cir.1989) and *United States v. $93,685.61 in United States Currency,* 730 F.2d 571, 572 (9th Cir.1984)) (citations omitted). As the factual basis for its decision, the Court emphasized that Thomas: had a criminal record involving drug activity; possessed unusually large amounts of cash; made significant cash expenditures which vastly exceeded his legitimate income; engaged in drug transactions at his business; and had unusual travel patterns. Additionally, informants stated that Thomas had used the proceeds of illegal drug dealing to purchase the properties sought to be forfeited.

With these principles in mind, we turn to the instant case. Although we disagree with the State's assessment that *Thomas* is dispositive based on a comparison of the facts of the two cases, we believe *Thomas* is instructive as to the "method of evidentiary assessment" regarding the establishment of probable cause for forfeiture. *Id.* at 1117. Here, the court properly weighed the evidence. It considered the totality of the circumstances and did not require the State to trace the money seized from the bank accounts to a particular drug transaction. In light of our standard of review, we cannot say the court's holding that the State failed to establish probable cause regarding the bank accounts is without support in the record or that the evidence is "reasonably susceptible of the opposite conclusion only." *Hiott,* 329 S.C. at 529, 496 S.E.2d at 421.

Even though there is evidence that Gordon was involved in illegal drug transactions and had significant cash expenditures, this evidence did not rise above "mere suspicion" that the bank proceeds were subject to forfeiture. *See United States v. All Right, Title and Interest in Real Property and Appurtenances Thereto Known as 785 St. Nicholas Ave. and*

*789 St. Nicholas Ave.,* 983 F.2d 396, 403 (2d Cir.1993) ("To establish probable cause neither the real property nor bank proceeds need to be linked to any one particular transaction, but the government must establish 'reasonable grounds'—that is to say, rising above 'mere suspicion'—that the property is subject to forfeiture.") (citations omitted). There was extensive documentary evidence that the bank accounts contained legitimate business income as evidenced by checks from Rock Hill car dealerships. It is also unclear whether the deposit ticket the State seized was evidence that Spencer deposited "drug money" or money from Gordon's car wash. Furthermore, the State failed to show the withdrawals from the bank accounts were used to pay for items in cash as opposed to Gordon paying for these items directly from money gained from the sale of drugs. Finally, the testimony of Gordon's accountant did not establish that Gordon was "washing" large amounts of undocumented money through the bank accounts. Therefore, we agree with the circuit court that the State failed to establish probable cause that the money in the bank accounts contained proceeds traceable to illegal drug transactions. Accordingly, we affirm the court's decision with respect to the NationsBank accounts.

### B.

Broadly construing the State's argument, it appears the State is appealing the entire $25,341.09 amount that was seized, which included the NationsBank accounts as well as two cash amounts seized from Gordon's person. These amounts include the $821 seized from Gordon on September 29, 1996, when he was arrested on unrelated warrants. The second amount was seized from Gordon the following day when he was arrested while driving his pickup truck. At the time of the arrest, Gordon was found to be in possession of $1,584 in cash, $880 of which was law enforcement funds used in the undercover drug transactions.

The State, however, did not address this specific argument in its brief. Although the State discusses the "monies seized" from Gordon, its entire argument is devoted to the bank accounts. Therefore, we find this issue not

properly preserved for our review.[5] *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (stating issues not argued in the brief are deemed abandoned and will not be considered on appeal).

Because, however, Gordon admits in his brief that there was an amount of "marked cash" seized from Gordon, we hold the State is entitled to the $880 of law enforcement funds. *See* S.C.Code Ann. § 44–53–582 (2002) ("All monies used by law enforcement officers or agents, in the line of duty, to purchase controlled substances during a criminal investigation must be returned to the State or local agency or unit of government furnishing the monies upon a determination by the court that the monies were used by law enforcement officers or agents, in the line of duty, to purchase controlled substances during a criminal investigation.").[6]

## II.

The State asserts the circuit court incorrectly incorporated the excessive fines test into the probable cause determination.

In *Medlock v. One 1985 Jeep Cherokee VIN 1JCWB7828FT129001*, 322 S.C. 127, 132, 470 S.E.2d 373, 377 (1996), our Supreme Court discussed the application of the Excessive Fines Clause [7] to civil forfeiture cases. In *Medlock*, the Court adopted the Fourth Circuit Court of Appeals' three-part instrumentality test. "Under this test, a court must examine (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role

5. Although we note the court's order contains several factual errors concerning at what point in the investigation the cash was seized from Gordon's person, this does not affect our analysis.

6. Additionally, even if properly preserved, we find the evidence supports the court's decision to return the $821 to Gordon. Because this money was seized from Gordon when he was arrested on warrants unrelated to the undercover investigation, it should not have been the subject of forfeiture.

7. In *Medlock*, the Appellant argued the forfeiture of her Jeep constituted an excessive fine in violation of the Eighth Amendment of the United States Constitution and Article I, § 15 of the South Carolina Constitution. *Medlock*, 322 S.C. at 132, 470 S.E.2d at 377.

and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder." *Id.* at 132, 470 S.E.2d at 377.

We agree with the State that the circuit court incorrectly referenced the excessive fines test. Although not specifically delineated as such in its order, the test was clearly a part of the court's analysis as shown by the listing of the three parts of the test. This constituted error. Because the court did not confirm the forfeiture of the NationsBank accounts, the excessive fines test was inapplicable. *See Austin v. United States,* 509 U.S. 602, 622, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (holding forfeiture is subject to the Excessive Fines Clause if the forfeiture can be viewed as punitive).

The court's error in applying the test, however, does not negate its ruling. As previously discussed, the court properly considered the requirements of the forfeiture statute and the State's burden to establish probable cause for the forfeiture. In light of our decision affirming the court's ultimate holding that the State failed to carry its burden to confirm the forfeiture, we find the error was harmless. *Cf. State v. Reeves,* 301 S.C. 191, 194, 391 S.E.2d 241, 243 (1990) (finding an error is harmless if it could not reasonably have affected the result of the trial); *Wells v. Halyard,* 341 S.C. 234, 237, 533 S.E.2d 341, 343 (Ct.App.2000) ("An alleged error is harmless if the appellate court determines beyond a reasonable doubt that the alleged error did not contribute to the verdict.").

## III.

■ The State argues the circuit court erred in finding Gordon's pickup truck had not been used to facilitate the distribution or sale of crack cocaine.

Specifically, the State contends the truck was properly seized pursuant to section 44–53–520(a)(4) or 44–53–520(a)(6). *See Condon,* 312 S.C. at 432, 440 S.E.2d at 896 ("Property facilitates the sale of a controlled substance and becomes thereby subject to forfeiture under section 44–53–520(a)(4) or section 44–53–520(a)(6), when, like under the Federal Civil Forfeiture Statute, 21 U.S.C. § 881(a)(4), there is a substantial

connection between the property seized and the underlying drug related activity.").

In its order, the court denied the forfeiture of the pickup truck based on two grounds. First, the court found the State failed to establish probable cause given the evidence showed that the truck only served as "a location from where drugs were taken." Secondly, the court concluded "[t]he State presented no evidence as to the amount of crack cocaine involved."

We find the court erred on both points. On the first point, the court erred as matter of law. Based on the language of section 44–53–520(a)(6), the fact that the truck was used to conceal or contain the crack cocaine was sufficient to support forfeiture of the vehicle. See S.C.Code Ann. § 44–53–520(a)(6) (Supp.2003) ("all conveyances including ... motor vehicles ... which are used or intended for use unlawfully to conceal, contain, or transport or facilitate the unlawful concealment, possession, containment, ... or transportation of controlled substances ... except as otherwise provided, must be forfeited to the State").

As to the second point, the State did offer evidence as to whether the amount of the crack cocaine that was concealed or contained within the truck exceeded the requisite statutory weight. Rhinehart testified that on September 23, 1996, the Department's agents executed a search warrant at his residence during which they recovered two bags of crack cocaine, each containing approximately 10 grams, and a pill bottle containing 1.8 grams. Rhinehart informed the agents that Gordon had given him the drugs just prior to the search. According to Rhinehart, he retrieved the drugs from the door of Gordon's pickup truck where Gordon indicated he had hidden them. See S.C.Code Ann. § 44–53–520(a)(6) (Supp. 2003) ("No motor vehicle may be forfeited to the State under this item unless it is used, intended for use, or in any manner facilitates a violation of Section 44–53–370(a), involving at least ... more than ten grains of crack....").

Because our standard of review in forfeiture cases only permits this Court to reverse on errors of law, we may not make findings of fact. Thus, we reverse on this issue and remand for the circuit court to reconsider the forfeiture of the

pickup truck consistent with the findings of this opinion. If the court confirms the forfeiture, it must then determine whether the forfeiture constituted an excessive fine. *See Medlock*, 322 S.C. at 132, 470 S.E.2d at 377 (outlining three-part test to determine whether a forfeiture constitutes an excessive fine).

## CONCLUSION

Based on the foregoing, we affirm the court's decision to return to Gordon the NationsBank accounts and a portion of the cash amounts. We reverse the court's decision regarding the pickup truck and remand for further proceedings consistent with this opinion. Finally, we order the return of $880 in law enforcement funds to the State.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GOOLSBY and ANDERSON, JJ., concur.