606 S.E.2d 471

**ALLENDALE COUNTY SHERIFF'S OFFICE, Appellant,**

and

**South Carolina Law Enforcement Division, Intervenor,**

v.

**TWO CHESS CHALLENGE II, games of skill, Respondent.**

No. 25900.

Supreme Court of South Carolina.

Heard Nov. 3, 2004.

Decided Nov. 22, 2004.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert D. Cook, and Senior Assistant Attorney General C. Havird Jones, Jr., all of Columbia, for Appellant and Intervenor.

Richard Mark Gergel and W. Allen Nickles, III, both of Gergel, Nickles & Solomon, of Columbia, for Intervenor.

A. Camden Lewis and Ariail E. King, both of Lewis Babcock & Hawkins, of Columbia; H. Woodrow Gooding, of Gooding & Gooding, of Allendale; and Jonathan Scott Altman,

of Derfner, Altman & Wilborn, of Charleston, for Respondents.

Chief Justice TOAL:

The magistrate court ruled, and the circuit court affirmed, that the two Chess Challenge II machines examined, and all machines operating in a similar manner, are games of skill that are lawful to possess. After certifying this appeal for review pursuant to Rule 204(b), SCACR, we reverse in part and affirm in part.

## FACTUAL/PROCEDURAL BACKGROUND

On September 23, 2003, the Allendale County Sheriff's Office (Sheriff's Office) received an anonymous phone call that video poker machines were being placed in Bert's Fast Stop, a convenience store in Fairfax, South Carolina. Two machines were found and taken to the magistrate's office for a ruling as to their legality.

The machines contained the game Chess Challenge II, a coin-operated game that has a payout feature. The game has four rotating reels in which seven icons spin according to a fixed sequence. Seven different icons (pawn, shield, horse, castle, prince, queen, and king) appear in various combinations over the course of a fixed 255–icon sequence and then repeat. The player is able to stop each reel individually by pushing the corresponding button. To win, a player must match icons on three of the four reels.

After examining the machines, hearing oral argument, considering expert reports, play trials, and affidavits,[1] the magistrate ruled the following:

[t]he Chess Challenge II games examined *and all those operating in an identical manner* are *games of skill* that

---

[1]. An affidavit by Solicitor Ralph Hoisington was submitted in which he stated the following: "it is my belief that the Chess Challenge II game operates in a different manner from the illegal games of chance that have appeared in the state of South Carolina. Chess Challenge II operates utilizing a repeating pattern and does not utilize features that would prevent a player's skill from determining the outcome of the game. In addition, a player is able to identify the icons as they appear, and to time the stopping of the game to increase the chance of winning."

are *lawful* to possess, own and operate under South Carolina law as redemption machines distributing prizes, including gift certificates, and merchandise.

(emphases added).

In addition, the magistrate found that the developer of Chess Challenge II had "taken certain measures to insure that all Chess Challenge II games operate in the identical manner as those examined," which would allow "law enforcement to quickly detect whether any effort [had] been made to alter the operational characteristics" of the game.

After the ruling, the solicitor filed a notice of appeal on behalf of the Sheriff's Office. But at the beginning of the hearing, the solicitor asked the judge to deny the appeal:

> Solicitor: Your Honor please, I have reviewed the order of [the magistrate]. I have reviewed the information that was presented during that hearing. I have reviewed the machine and I have listened to the advice of someone in whom I have great confidence and faith, and I withdraw my appeal. Don't withdraw my appeal, sir, I think you should deny my appeal.

> The Court: So you think I should affirm the judgment of Judge Love?

> Solicitor: Yes, sir.

Based on the solicitor's request, and without further consideration, the circuit judge affirmed the magistrate's order.

Four days later, the solicitor inexplicably filed a motion for reconsideration on the basis that the magistrate did not have the authority to find that the machines examined and all those operating in an identical manner were lawful. The motion was denied.

Soon after, the South Carolina Law Enforcement Division (SLED) filed a motion for relief from the order and an alternative motion to alter, amend or reconsider, arguing that jurisdiction was proper only as to the two machines before the court, not as to machines operating in an identical manner throughout the state. Moreover, SLED argued that because it was not served with notice or given an opportunity to be heard, it was not bound by the court's order.

SLED subsequently withdrew its motion for relief, and moved, instead, to intervene and to have the case certified to this Court. Both motions were granted.

The Sheriff's Office and SLED have raised the following issues for review:

I. Did the lower courts have jurisdiction to rule on the legality of Chess Challenge II machines not before the court?

II. Is the magistrate's order void for lack of controversy and lack of notice to SLED?

## LAW/ANALYSIS

### STANDARD OF REVIEW

When there is any evidence, however slight, tending to prove the issues involved, this Court may not question a magistrate court's findings of fact that were approved by a circuit court on appeal. *State v. 192 Coin–Operated Video Game Machines*, 338 S.C. 176, 185, 525 S.E.2d 872, 876 (2000). An action for forfeiture of property is a civil action at law. *Id.*

### I.  Lack of Jurisdiction

The Sheriff's Office and SLED contend that the magistrate lacked jurisdiction to determine the legality of machines that were not before the court. We agree.

South Carolina statutory law prescribes the procedure for seizing and destroying unlawful machines:

[a]ny machine, board, or other device prohibited by Section 12–21–2710 [2] must be seized by any law enforcement officer and at once taken before any magistrate of the county in which the machine, board, or device is seized who shall immediately examine it, and if satisfied that it is in violation

---

**2.** This section provides, in part, the following: [i]t is unlawful for any person to keep on his premises or operate ... any vending or slot machine, punch board, pull board, or other device pertaining to games of chance ... including those ... that display different pictures, words, or symbols, at different plays or numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine. ... " S.C.Code Ann. § 12–21–2710 (2000).

of Section 12–21–2710 or any other law of this State, direct that it be immediately destroyed.

S.C.Code Ann. § 12–21–2712 (2000).

■■■■ In general, it is within the State's police power to take gaming devices by forfeiture. *Westside Quik Shop, Inc. v. Stewart,* 341 S.C. 297, 303, 534 S.E.2d 270, 273 (2000). An action for forfeiture is a civil *in rem* action at law that is, by its nature, a penal action that must be strictly construed. *Pope v. Gordon,* 359 S.C. 572, 581, 598 S.E.2d 288, 293 (Ct.App.2004). Consequently, *in rem* forfeiture statutes must be interpreted in light of the evil sought to be remedied and in a manner that is consistent with the statute's purpose. *Id.* (quoting *Ducworth v. Neely,* 319 S.C. 158, 162, 459 S.E.2d 896, 899 (Ct.App.1995)).

The facts in a prior decision by this Court demonstrate that the seizure and destruction process outlined in section 12–21–2712 must be followed even when the machines seized have been previously deemed illegal. In *192 Coin–Operated Video Game Machines,* SLED seized 192 "Cherry Master" and "8–Liner" video machines. Id. at 183, 525 S.E.2d at 876. These machines had previously been deemed illegal gambling devices by this Court. See *State v. One Coin–Operated Video Game Machine,* 321 S.C. 176, 467 S.E.2d 443 (1996) (finding "Cherry Master" is an illegal slot machine); *State v. Four Video Slot Machines,* 317 S.C. 397, 453 S.E.2d 896 (1995) (finding "Lucky 8 Line" is an illegal slot machine). Although the machines had previously been deemed illegal, the seizure and forfeiture process outlined in section 12–21–2712 was still followed: SLED obtained a search warrant and seized the 192 machines; and the magistrate personally examined the machines, determined that they were illegal, and ordered their destruction. *192 Coin–Operated,* 338 S.C. at 183, 525 S.E.2d at 875.

■■■■ Also while at the warehouse, SLED discovered an additional 23 machines that it believed were illegal. Once again, SLED obtained a search warrant and seized the machines; a magistrate examined them, found them to be illegal, and ordered their destruction. *Id.* This Court affirmed both destruction orders. *Id.* at 202, 525 S.E.2d at 886.

In the present case, the magistrate ruled on the legality of the two machines before the court and "all those [machines]

operating in an identical manner." This broad ruling exceeded the scope of the magistrate's authority and is contrary to the machine-by-machine forfeiture process outlined in the statute and carried out in other cases. Therefore, we find that the magistrate court lacked jurisdiction to determine the legality of machines not before court.

As to the two machines seized, examined, and deemed legal, there is nothing preventing the Sheriff's Office or other law enforcement officials from seizing the machines once again for the magistrate's examination. Because video machines may be manipulated so as to change their nature from lawful to unlawful, law enforcement may, based on probable cause, seize the machines in question once again. In other words, the effect of the magistrate's order is that it deems the machines lawful *at the time* they were seized and examined.

## II. Other Grounds

The Sheriff's Office and SLED argue that the magistrate's ruling is void because (1) an actual controversy did not exist, and (2) SLED was not notified of the proceedings. We disagree with both arguments.

■ First, in support of their argument that the magistrate's ruling is void for lack of controversy, the Sheriff's Office and SLED claim that they were not given the opportunity to present evidence that the machines were illegal. While it is true that the magistrate's order only cites evidence presented by Respondents, there is no evidence in the record suggesting that the Sheriff or other law enforcement officials did not have an opportunity to present evidence that the machines were illegal.

Second, a plain reading of the statute does not support the argument that the magistrate's order should be voided because SLED was not notified of the forfeiture hearing. See *State v. Blackmon*, 304 S.C. 270, 403 S.E.2d 660 (1991) (a statute must be given its plain and ordinary meaning). The statute states that the machines may be "seized by any law enforcement officer." Nothing in the statute specifically provides that SLED must be notified before the magistrate makes a determination.

Therefore, the magistrate's order should not be voided for lack of controversy or lack of notice to SLED.

## CONCLUSION

We affirm the magistrate's decision finding that the two Chess Challenge II machines seized and examined were lawful. Because the magistrate did not have the authority to deem "all those [machines] operating in an identical manner" lawful, we reverse that portion of the ruling.

MOORE, WALLER, BURNETT, JJ., and Acting Justice G. THOMAS COOPER, concur.