672 S.E.2d 794

**Trey GOWDY, as Solicitor for the Seventh Judicial Circuit, Respondent,**

**v.**

**Bobby GIBSON, Jr. and Lillie Gibson, Appellants.**

**In rem $146,050.00 in U.S. Currency.**

**No. 4465.**

Court of Appeals of South Carolina.

Heard Oct. 21, 2008.

Decided Dec. 4, 2008.

Rehearing Denied Feb. 25, 2009.

Miles F. Weaver, of Columbia, for Appellants.

Robin C. File, Jr., of Spartanburg, for Respondent.

228

KONDUROS, J.:

Bobby Gibson, Jr. (Gibson) and his mother, Lillie Gibson, appeal the trial court's confirmation of the forfeiture of $146,050 pursuant to section 44–53–520 of the South Carolina Code (2002 & Supp.2007). We affirm.

## FACTS

In September 2004, Gibson was under investigation by the Spartanburg County Sheriff's Office for drug activity. When officers stopped Gibson for driving under suspension, they searched him and discovered a single crack rock in the bottom of his cell phone case. Based on this discovery, police obtained a search warrant for 2015 Howard Street in Spartanburg, where Gibson lived with his mother, Lillie Gibson. When executing the warrant, police found a small fire safe in the attic, which could only be accessed through a hole cut in the ceiling of the closet in Gibson's bedroom. Before opening the safe, officers allowed the narcotics canine to sniff the safe and the dog alerted on it. The safe contained $146,050 as well as a small metal box containing an unknown amount of currency and old coins. Mrs. Gibson did not know the combination to the safe and made no claim of ownership to the money at that time. Officers also found $3,000 in the trunk of a car located at the home. Officers seized the $146,050 but elected not to seize the metal box or the $3,000.

A search of the premises outside the house yielded a set of digital scales, a plastic medicine bottle containing 24.4 grams of crack cocaine, and a plastic bag containing 11.7 grams of marijuana. The items were found approximately 140 feet from the location of the safe, concealed under bricks, behind a detached garage located behind the residence.

Another search warrant was executed at 420 Farley Street, the location of a building being remodeled by Gibson for use as a beauty salon. A plastic bag containing 713 grams of cocaine was found hidden in the ceiling at that location.

The solicitor filed the underlying civil action to confirm the seizure and forfeiture of the money alleging it was Gibson's property and was subject to forfeiture under section 44–53–520 of the South Carolina Code (2002 & Supp.2007). Mrs.

Gibson was added as a party to the action based on her claim to the money.

The circuit court determined the money was subject to forfeiture "because it was traceable to illegal transactions based on the facts presented in this case." The court made its finding "applying the [ ] standard in *Pope v. Gordon,* 359 S.C. 572, 598 S.E.2d 288 (2004)," which recognized a totality of the circumstances analysis for determining probable cause. The court cited the close proximity of the money to evidence of illegal drug activity, Gibson's history of drug activity, and the failure to provide a plausible explanation for a legitimate source for the funds as a basis for its ruling. The court also relied on the credibility of the testifying officers to determine the forfeiture was appropriate. This appeal followed.

## STANDARD OF REVIEW

"An action for forfeiture of property is a civil action at law." *Pope v. Gordon,* 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006). In an action at law, tried by a judge, the appellate court standard of review extends only to the correction of errors of law. *Id.* "The trial judge's findings of fact will not be disturbed on appeal unless the findings are wholly unsupported by the evidence or controlled by an erroneous conception of the application of the law." *Id.*

## LAW/ANALYSIS

### I.  The State's Case Under Section 44–53–520 of the South Carolina Code[1]

The Gibsons contend the State failed to establish the seized funds were in close proximity to evidence of illegal drug activity or were traceable to illegal drug activity. We disagree.

The purpose of a forfeiture hearing is to confirm the state had probable cause to seize the property in question. *Medlock    v.    One    1985    Jeep    Cherokee    VIN 1JCWB7828FT129001,* 322 S.C. 127, 131, 470 S.E.2d 373, 376

---

1. The discussion in this section encompasses the third issue raised on appeal regarding the trial court's use of the standard set forth in *Pope v. Gordon,* 359 S.C. 572, 598 S.E.2d 288 (Ct.App.2004).

(1996). "Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise." *Lynch v. Toys "R" Us—Del., Inc.*, 375 S.C. 604, 616–17, 654 S.E.2d 541, 548 (Ct.App.2007) (citing *Jones v. City of Columbia*, 301 S.C. 62, 65, 389 S.E.2d 662, 663 (1990)).

Section 44–53–520 of the South Carolina Code (2002 & Supp.2007) enumerates what property is subject to forfeiture in a criminal action. Sub-parts (7) and (8) are the sub-parts of concern to us in this case.

(a) The following are subject to forfeiture ...

(7) all property including, but not limited to, monies, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, and all proceeds including, but not limited to, monies, and real and personal property traceable to any exchange;

(8) all monies seized in close proximity to forfeitable controlled substances, drug manufacturing, or distributing paraphernalia, or in close proximity to forfeitable records of the importation, manufacturing, or distribution of controlled substances and all monies seized at the time of arrest or search involving violation of this article. If the person from whom the monies were taken can establish to the satisfaction of a court of competent jurisdiction that the monies seized are not products of illegal acts, the monies must be returned pursuant to court order.

*Id.*

The Gibsons contend the relationship between the locations of the money and the drugs and drug paraphernalia did not constitute close proximity as contemplated by the statute. No South Carolina cases discuss precisely how close proximity is to be measured. However, we do not find it necessary to determine what distance constitutes close proximity for purposes of sub-part (8). Although the circuit court stated the money was found in close proximity to evidence of illegal drug activity, that finding is not the sole basis for the court's ruling. Rather, proximity appears to be one of several factors the

court considered in determining the money was "traceable" to illegal drug activity under sub-part (7).

Therefore, we turn our attention to whether the State established probable cause the money was traceable to illegal drug activity. Traceability was recently discussed by our supreme court in *Pope v. Gordon,* 369 S.C. 469, 633 S.E.2d 148 (2006). In that case, police seized a business bank account of the claimant, who was convicted of trafficking in cocaine. *Id.* at 473, 633 S.E.2d at 150. The State presented evidence Gordon paid for his monthly rent in cash and did not file tax returns for 1995 and 1996. *Id.* at 475, 633 S.E.2d at 151–52. The State further contended Gordon's expenses exceeded his business income. *Id.* at 475–76, 633 S.E.2d at 152. The court concluded:

> The record shows that [Gordon] did have a legitimate car detailing business that involved cash transactions. In addition, the bank records show that money in the accounts came from the car detailing business. As a result, the State failed to demonstrate how the money contained in the bank account came from illegal drug transactions.

*Id.* at 476, 633 S.E.2d at 152.

The *Pope* court went on to reject a totality of the circumstances approach set forth in *United States v. Thomas,* 913 F.2d 1111 (4th Cir.1990). In *Thomas,* the fourth circuit examined the government's evidence *in toto* in determining there was probable cause to seize certain property of Thomas' including a $25,000 bond. *Id.* at 1114–15, 1117. The court considered Thomas' unusual travel patterns, one-way trips to Miami, prior drug activity, and excessive expenditures for his legitimate income. *Id.* at 1115–17. The court concluded the evidence, "[i]n its totality," strongly implicated Thomas in illegal drug activity. *Id.* at 1117. In rejecting this approach our supreme court stated: "[W]e decline to use the rationale in *Thomas* because we believe the standard in *Thomas* would lessen the burden on the State and is in direct contravention to the word traceable in the language of the statute." *Pope,* 369 S.C. at 476, 633 S.E.2d at 152.

With all the foregoing in mind, we find this case to be distinguishable from *Thomas* and *Pope.* As previously discussed, the money in this case was found hidden in the ceiling

of Gibson's bedroom, and drugs and drug paraphernalia were discovered on the property. Furthermore, the drug dog at the scene alerted to the safe indicating the safe or its contents had at some point in time been in contact with illegal narcotics. Additionally, drugs were found at the beauty shop, another location under Gibson's control.

While our analysis does look at several pieces of evidence, we do not believe this is the type of totality of the circumstances analysis set forth in *Thomas* and disapproved of in *Pope*. We believe the evidence presented in this case is much more compelling and does not require making the kinds of assumptions that would have been required in *Pope*. Drugs were found on the same property with the money. The funds were hidden in a location that was inaccessible to the alleged owner. Mrs. Gibson made no claim to the money at the time it was seized and, very significantly, the drug dog alerted on the safe making it more likely than not the money and/or the safe had been in contact with drugs.[2]

We think it important to note, *Pope* is factually distinguishable from the case *sub judice*. The money at issue in *Pope* was in a business bank account, which would necessitate tracing the funds through some type of documentation or testimony the money was not the product of legitimate business. In this case, the actual currency was found during the execution of a search warrant seeking illegal drugs.

In *Pope*, the court expressed concern over lessening the burden on the State to prove its case. We agree mere suspicion and innuendo should not be mistaken for the establishment of probable cause. However, the State was not required to prove with certainty the money was connected to illegal drug transactions. The statute requires the State to establish probable cause the seized money was traceable to drug activity. We believe, under the particularized circumstances of this case, the State met its burden.

## II. The Gibsons' Rebuttal

The Gibsons further argue they satisfied the burden of showing by a preponderance of the evidence the money be-

---

**2.** While some courts disapprove of the admission of drug canine alerts, the Gibsons did not object to the admission of the testimony in this case.

longed to Mrs. Gibson and constituted her life savings. We disagree.

"If probable cause is shown, the burden shifts to the owner to show by the preponderance of the evidence that he or she 'was not a consenting party to, or privy to, or did not have knowledge of, the use of the property which made it subject to seizure and forfeiture.' " *Medlock,* 322 S.C. at 131, 470 S.E.2d at 376 (quoting S.C.Code Ann. § 44–53–586(b)(1) (Supp.1994)).

Mrs. Gibson was under a higher burden than the State and was required to prove her claim to the money by a preponderance of the evidence. Mrs. Gibson testified the money seized was her life savings. She testified she had worked at the same company for twenty-seven years and at the time of trial earned $14.33 per hour. Mrs. Gibson indicated she sometimes worked as much as sixty hours per week being paid time-and-a-half for any time over forty hours. Mrs. Gibson also claimed she had some money from illegal gambling. She testified she did not keep the money in the bank because she had lost money that way before and the safe was in the attic because it would be safer in the event of a break-in. Mrs. Gibson admitted she could not access the safe herself and did not know the combination.

Mrs. Gibson was unable to provide any documentation regarding a legitimate source for the money or to in any way rebut the evidence presented by the state the money was connected to illegal drug activity. Furthermore, the circuit court did not find Gibson or Mrs. Gibson to be credible regarding their explanation for the money. Although not bound by that conclusion, we generally defer to the findings of the trial judge in that regard. *See USAA Prop. & Cas. Ins. Co. v. Clegg,* 377 S.C. 643, 652–53, 661 S.E.2d 791, 796 (2008) ("[N]oting the circuit court judge, who saw and heard the witnesses, is in a better position to evaluation their credibility and assign comparative weight to their testimony.") (citing *Reed v. Ozmint,* 374 S.C. 19, 24, 647 S.E.2d 209, 211 (2007)).

For all of the foregoing reasons, the determination of the trial court is

**AFFIRMED.**

ANDERSON and WILLIAMS, JJ., concur.