633 S.E.2d 148

Thomas E. POPE, as Solicitor, Sixteenth
Judicial Circuit, Petitioner,

v.

Willie Edward GORDON, Jr., and Twenty-five Thousand Three Hundred Forty-one and 09/100's (25,341.09) Dollars in U.S. Currency, One 1984 GMC Pickup Truck; Two Motorola Cellular Phones (Serial Numbers; SUF1857M and SUG1049B 230 L012QT16WF1); and One Hundred Twenty–EIght & no/100s (128.00) Dollars in U.S. Currency, Respondent.

No. 26179.

Supreme Court of South Carolina.

Heard June 6, 2006.

Decided July 3, 2006.

Kristie H. Jordan, of York, for Petitioner.

Leland Bland Greeley, of Rock Hill, for Respondent.

Chief Justice TOAL:

The court of appeals held that the State failed to provide probable cause that the property sought to be forfeited was traceable to illegal drug activity. We affirm.

### FACTUAL / PROCEDURAL BACKGROUND

In 1996, William Edward Gordon, Jr. (Respondent) was arrested for trafficking in crack cocaine. At the time of his arrest, Respondent owned a car cleaning and detailing business named Gordon's Car Cleaning Service. The primary customers of the service were automobile dealerships and individuals.

The Rock Hill Police Department arrested Respondent during a 1996 investigation. The Police Department's investigation of Respondent began in 1994. In January of 1994, the Police Department conducted a controlled buy of illegal drugs from Respondent. In February of 1994, the Police Department obtained a search warrant for Respondent's home and recovered crack cocaine and marijuana. While conducting an additional search at Respondent's home, the Police Department discovered crack cocaine in a well house near the home. Respondent plead guilty to possession of marijuana which was recovered during the 1994 investigation.

In September of 1996, the Police Department began a second investigation of Respondent following the arrest of

another crack dealer in the Rock Hill area who identified Respondent as the supplier. In addition, the same person identified Tommy Rhinehart (Rhinehart) as a dealer.

Rhinehart agreed to cooperate with the Police Department after he was arrested for possession of crack cocaine and other narcotics. The undisputed facts outlined by the court of appeals relating the sting operation are as follows:

The next day, Rhinehart met with Gordon to discuss future transactions. During the course of the conversation, Rhinehart told Gordon that he had "flushed" the crack cocaine during the Department's search of his residence. On September 26, 1996, Gordon and his nephew, Spencer, gave Rhinehart another bag of crack cocaine. Spencer stayed with Rhinehart while he sold some of the crack cocaine. On September 27, 1996, Rhinehart met with agents and turned over the proceeds from the sale and the remaining crack cocaine. At that time, the agents gave Rhinehart $500 in marked money to pay Gordon for the crack cocaine that he had "fronted" him. In a recorded conversation, Rhinehart set up another transaction with Gordon. Gordon indicated that he needed to contact Spencer. Rhinehart was then instructed to meet Spencer at Gordon's car wash. At the car wash, Spencer gave Rhinehart two bags of crack cocaine, weighing 9.4 grams and 9.8 grams respectively, and collected $500 for a previous transaction. Rhinehart then left, met with the agents, and turned over the crack cocaine.

On September 30, 1996, Rhinehart paged Gordon to arrange a meeting time so that he could pay for the two additional bags of crack cocaine. The agents gave Rhinehart $1,000 in marked money and equipped him with a surveillance wire. Rhinehart met with Spencer at a designated location. He then gave Spencer the money received from the sale of the crack cocaine that was purchased earlier from Gordon. Spencer left and told Rhinehart he would return with more crack cocaine. Spencer met Gordon, who was driving the pickup truck, at the car wash. Spencer left the car wash, drove to NationsBank, and made a deposit. Shortly thereafter, agents arrested Spencer and searched him. The agents found a bank deposit receipt for account number 790167308, the business account for Gordon's car wash.

The balance of the account was $22,209.85, which included the deposit.

During the same time period, Gordon was arrested while driving his pickup truck. He was found to be in possession of two cellular phones as well as $1,584 in cash, $880 of which was law enforcement funds given to Spencer earlier by Rhinehart. Pursuant to this arrest, the State seized the following property: the NationsBank operating account of Gordon's car wash business, $22,209.85 plus $726.24 from the payroll account; the $1,584 in cash; the pickup truck; and two cellular phones.

The forfeiture action also included seizures of cash in the amount of $821 and $128. On September 29, 1996, agents seized $821 in cash from Gordon when he was arrested on unrelated warrants during the search of another person's residence. On October 5, 1996, Gordon was arrested for obstruction of justice. While Rhinehart was wearing a surveillance wire, Gordon offered him $5,000 to leave town and not testify against him. At the time of the arrest, the agents seized $128 in cash from Gordon.

*Pope v. Gordon,* 359 S.C. 572, 598 S.E.2d 288 (Ct.App.2004).

Ultimately, Respondent was convicted of trafficking in crack cocaine and sentenced to thirty years imprisonment and payment of a $50,000 fine. The State then filed this forfeiture action, seeking to confirm the seizures made as a result of this investigation were proceeds of illegal drug activity.

The circuit court ordered that all seized property, with the exception of $128 in "marked" cash be returned to Respondent. The court found that the State failed to meet its burden of showing probable cause that there was a nexus between the illegal drug activity and the property sought to be forfeited. The State appealed and the court of appeals affirmed. As a result, the State sought and this Court granted certiorari to review the following issue:

Did the court of appeals err in holding that the State failed to establish probable cause that the property sought to be forfeited was traceable to illegal drug transactions?

474

## Standard of Review

■■■ An action for forfeiture of property is a civil action at law. *State v. 192 Coin–Operated Video Game Machs.*, 338 S.C. 176, 525 S.E.2d 872 (2000). In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law. *Okatie River, L.L.C. v. Southeastern Site Prep, L.L.C.*, 353 S.C. 327, 577 S.E.2d 468 (Ct.App.2004). The trial judge's findings of fact will not be disturbed on appeal unless the findings are wholly unsupported by the evidence or controlled by an erroneous conception of the application of the law. *Gordon v. Colonial Ins. Co.*, 342 S.C. 152, 536 S.E.2d 376 (Ct.App.2000).

## Law / Analysis

The State argues that the court of appeals erred in holding that the State failed to establish probable cause that the property sought to be forfeited was traceable to illegal drug transactions. We disagree.

■■ The purpose of a forfeiture hearing is to confirm that the state had probable cause to seize the property forfeited. *Medlock v. One 1995 Jeep Cherokee VIN 1JCWB7828FT129001*, 322 S.C. 127, 131, 470 S.E.2d 373, 376 (1996). The State has the initial burden of demonstrating probable cause for the belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by statute. *United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir.1990) (quoting *Boas v. Smith*, 786 F.2d 605, 609 (4th Cir.1986)). If probable cause is shown, the burden then shifts to the owner to prove that he or she was not a consenting party to, or privy to, or did not have knowledge of, the use of the property which made it subject to seizure and forfeiture. *Medlock*, 322 S.C. at 131, 470 S.E.2d at 376 (quoting S.C.Code Ann. § 44–53–586(b)(1) (2002)).

The relevant statute outlines that the following are subject to forfeiture in part:

all property including, but not limited to, monies, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, and all proceeds including, but not

limited to, monies, and real and personal property traceable to any exchange.

S.C.Code Ann. § 44–53–520(a)(7) (2002).

The State urges this Court to adopt the rationale of the Fourth Circuit employed in *U.S. v. Thomas.* 913 F.2d 1111 (4th Cir.1990).[1] While, the court in *Thomas* outlined the proper standard in a forfeiture action, the court employed a "totality of the circumstances" approach in finding that proceeds were traceable to illegal drug activity. *Thomas,* 913 F.2d at 1114–1115. The court noted the significance of the evidence presented, namely the possession of unusually large amounts of cash, or the making of uncommonly large purchases that may be circumstantial evidence of drug trafficking. *Thomas,* 913 F.2d at 1115. The court further relied on the fact that it appeared that Thomas's cash expenditures exceeded any verifiable income in determining that the totality of the circumstances pointed to income derived from illegal drug activity. *Id.* As a result, the State urges this Court to view the evidence "as a total picture" and to employ a "practical, common sense" approach in determining that the probabilities point to the proceeds being derived from illegal drug transactions. *See Thomas,* 913 F.2d at 1114–1115.

In the present case, the State presented several witnesses who testified regarding Respondent's finances. Christine Rogers, an employee of a property management company, testified she became acquainted with Respondent in 1995 or 1996 when she rented him an apartment in Rock Hill. In 1996, Respondent entered into a commercial lease agreement for the purchase of property. The terms of the agreement required Respondent to provide a $6,000 down payment and then a $750 monthly lease payment. According to Rogers, Respondent paid cash for monthly rent for his apartment as well as the $6,000 down payment.

The State also presented, John Comer, a South Carolina Department of Revenue employee. Comer testified the Department had no tax records for Respondent individually or

---

1. The federal forfeiture statute at issue in *Thomas* contains similar language to the state statute at issue in the present case. *See* 21 U.S.C. § 881(a)(6) (Supp.2000). However, we believe the language in the federal statute to be broader than that of our own state statute.

for the car wash during the years of 1995 or 1996. Further, the State offered the testimony of Margaret Parsons, an accountant, who began assisting Respondent with his finances beginning in May or June 1996. Based on her review of Respondent's finances, Parsons believed Respondent's expenses exceeded his business income and that the balance of the expenses was paid for in cash.

In addition to this testimony, the State presented Respondent's voluminous NationsBank records into evidence. The record reflects that the NationsBank's documents contain extensive evidence that the bank accounts held legitimate business income, including checks from Rock Hill car dealerships. However, the record is unclear whether the deposit ticket the State seized was evidence that Spencer deposited drug money or money from Respondent's car wash. Furthermore, the State failed to show the withdrawals from the bank accounts were used to pay for items in cash as opposed to Respondent paying for these items directly from money gained from the sale of drugs.

We hold that the court of appeals correctly held that the State failed to meet its burden of proof. The record shows that Respondent did have a legitimate car detailing business that involved cash transactions. In addition, the bank records show that money in the accounts came from the car detailing business. As a result, the State failed to demonstrate how the money contained in the bank account came from illegal drug transactions.

Therefore, we affirm the court of appeals opinion holding that the State failed to establish probable cause that the money in the bank accounts contained proceeds traceable to illegal drug transactions. Further, we decline to use the rationale in *Thomas* because we believe the standard in *Thomas* would lessen the burden on the State and is in direct contravention to the word traceable in the language of the statute. *See Ducworth*, 319 S.C. at 162, 459 S.E.2d at 899 (holding that the terms of a forfeiture statute must be strictly construed and as a result, the words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation).

CONCLUSION

Accordingly, based on the above cited authority, we affirm the court of appeals' decision.

MOORE, WALLER, BURNETT, JJ., and Acting Justice D. GARRISON HILL, concur.