706 S.E.2d 495

Trey GOWDY, as Solicitor for the Seventh
Judicial Circuit, Respondent,

v.

Bobby GIBSON, Jr., and Lillie Gibson, Petitioners.

In re $146,050.00 in U.S. Currency.

No. 26920.

Supreme Court of South Carolina.

Heard Oct. 6, 2010.

Decided Jan. 31, 2011.

376

J. Falkner Wilkes, of Greenville, for Petitioners.

Assistant Solicitor Robin C. File, of Spartanburg, for Respondent.

Chief Justice TOAL.

In this case, we granted a writ of certiorari to review the court of appeals' holding that the State established probable cause that a substantial connection existed between $146,050, confiscated from Petitioners' home, and illegal drug activity because the money was traceable to illegal transactions, as required by section 44–53–520(a)(7) of the South Carolina Code. We agree with the court of appeals, and therefore, affirm.

## FACTUAL/PROCEDURAL BACKGROUND

This civil forfeiture action was initiated by Solicitor Trey Gowdy (the State) to confirm the seizure and forfeiture of $146,050 in cash that was found in a safe in the home of Bobby Gibson, Jr. (Bobby Gibson) and his mother Lillie Gibson (Ms. Gibson) (together, Petitioners).

In September 2004, Spartanburg County police obtained a warrant to search the home of Bobby Gibson based on suspicions raised from an ongoing investigation of his drug activity and earlier arrest for possession of crack cocaine. At the home, which Bobby Gibson shared with his mother, police found a small fire safe in the attic. This safe could only be accessed through a hole cut in the ceiling of Bobby Gibson's bedroom. After a narcotics canine sniffed the safe and alerted, officers forcibly opened the safe and found $146,050 in cash, organized in rubber-banded stacks, and a small metal box containing an unknown amount of currency and old coins. Ms. Gibson, who arrived shortly after the officers opened the

safe, said she did not know the combination to the safe and did not make a claim to the money when officers informed her they would be confiscating it. Officers left the small metal box with Ms. Gibson.

Approximately 140 feet from the location of the safe, officers found a set of digital scales, a plastic medicine bottle containing 24.4 grams of crack cocaine, and a plastic bag containing 11.7 grams of marijuana. These items were concealed beneath a stack of bricks found behind a detached garage in the back yard of the residence.

In addition, police obtained a warrant to search a building Bobby Gibson was remodeling, located several blocks away from his residence. There police found a plastic bag containing 713 grams of cocaine, also hidden in the ceiling.

In bringing this action, the State sought to confirm the propriety of the forfeiture, arguing it was Bobby Gibson's property and it was subject to forfeiture under section 44–53–520(a) of the South Carolina Code. In Bobby Gibson's March 2005 Answer to Respondent's Complaint, he admitted that he had an interest in the property. Prior to the December 2006 hearing, however, Ms. Gibson was added as a party, claiming that she, rather than her son, owned the property.

After a bench trial, the circuit court found that the State established probable cause for the forfeiture because the money was found in close proximity to the evidence of illegal drug activity, and because the money was traceable to illegal transactions based on the facts presented in the case. Additionally, the court found that Petitioners failed to establish by a preponderance of the evidence that the money belonged to Ms. Gibson. Having heard the testimony, the circuit court found that the Petitioners' position lacked credibility. The court of appeals affirmed.

## ISSUES

Petitioners present the following issues for review:

I. Did the court of appeals err by not ruling on the issue of close proximity, as provided in section 44–53–520(a)(8) of the South Carolina Code?

II. Did the court of appeals err in finding there was probable cause to support civil forfeiture because the money was traceable to an illegal transaction?

III. Did the court of appeals err in holding that Petitioners failed to establish their claim to the currency by a preponderance of the evidence?

## STANDARD OF REVIEW

"An action for forfeiture of property is a civil action at law." *Pope v. Gordon*, 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006). When an action at law is tried without a jury, the standard of review extends only to the correction of errors of law. *Id.* The circuit judge's findings of fact will only be disturbed on appeal if the findings are wholly unsupported by the evidence or controlled by an erroneous application of the law. *Id.*

## LAW/ANALYSIS

"The purpose of a forfeiture hearing is to confirm that the state had probable cause to seize the property forfeited." *Pope v. Gordon*, 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006) (*citing Medlock v. One 1985 Jeep Cherokee VIN 1JCWB7828FT129001*, 322 S.C. 127, 131, 470 S.E.2d 373, 376 (1996) (validating the statutory standard for seizing property under section 44-53-520 is probable cause)). The initial burden lies with the state to show it had probable cause for believing a substantial connection exists between the property to be forfeited and the criminal activity. *Id.* Once probable cause is shown, the burden shifts to the property owner to show by a preponderance of the evidence that the property was innocently owned. *Medlock*, 322 S.C. at 131, 470 S.E.2d at 376 (*citing* S.C.Code Ann. § 44-53-586(b) (Supp.1994)).

Section 44-53-520(a) enumerates eight instances when property is subject to forfeiture. S.C.Code Ann. § 44-53-520(a)(1)-(8) (2002 & Supp.2007). Of these, only subsections (7) and (8) are at issue:

(7) all property including, but not limited to, monies, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, and all proceeds in-

cluding, but not limited to, monies, and real and personal property *traceable* to any exchange;

(8) all monies seized in *close proximity* to forfeitable controlled substances, drug manufacturing, or distributing paraphernalia, or in close proximity to forfeitable records of the importation, manufacturing, or distribution of controlled substances and all monies seized at the time of arrest or search involving violation of this article. If the person from whom the monies were taken can establish to the satisfaction of a court of competent jurisdiction that the monies seized are not products of illegal acts, the monies must be returned pursuant to court order.

*Id.* (emphasis added).

Thus, a showing that the property to be forfeited was in close proximity to illegal drugs, or that there was probable cause to believe the property was traceable to illegal drugs, will satisfy the state's burden of proof.

## I. The Issue of Close Proximity, as Provided in Section 44–53–520(a)(8) of the South Carolina Code

██ Petitioners argue the court of appeals erred by not definitively ruling on whether the currency in question was closely proximate to the illegal drugs and distributing paraphernalia found on the property. We disagree.

Under section of 44–53–520(a) of the South Carolina Code, the State must show that the property seized fits the description of one of the types of properties listed in subsections (1) through (8). Because the court of appeals affirmed the circuit court's holding that the money was traceable under subsection (7), it was unnecessary for the court of appeals to rule on whether the property was closely proximate under subsection (8). However, we defer to the circuit court's finding that the money seized was in close proximity to the contraband, as explained herein.

Petitioners submit that the drugs and money were not closely proximate because they were found approximately 140 feet apart, and not in the same building. South Carolina courts have not specifically addressed how close proximity should be measured. However, other states with forfeiture statutes that contain close proximity provisions have found

that close proximity should not be defined in terms of measurement, but rather, on a case by case basis. *See City of Meridian v. Hodge*, 632 So.2d 1309, 1312 (Miss.1994) (declining to set rigid rules to fix close proximity, such as a particular number of feet, or a particular room); *see also Limon v. State*, 285 Ark. 166, 685 S.W.2d 515, 516 (1985) (finding "close proximity" means "very near" and should therefore be determined on a case by case basis).

■ We, too, believe that close proximity, as provided in section 44–53–520(a)(8), should be decided on a case by case basis. We additionally note that by enumerating instances where property is subject to forfeiture, the General Assembly intended to limit the state's forfeiture power to clear situations where property was illegally obtained. We do not believe the General Assembly wished to encourage drug traffickers to strategically house their cash stores so as to evade seizure by the government. Establishing a bright line proximity measure would do just that.

■ Bearing in mind that the circuit judge's finding of close proximity is a question of fact, we will not disturb this finding on appeal unless it is wholly unsupported by the evidence. In making its proximity finding, the circuit court took into account: (1) the drugs and money were housed on the same property, and (2) that property was under the control of Bobby Gibson. We are not prepared to say that, as a matter of law, money is forfeitable simply because it is found on the same property as contraband, or because it is found on property that is controlled by the criminal defendant. However, we are deferential to the circuit court's finding of facts in this case.

Therefore, we find that the circuit court's determination that the drugs and the money were closely proximate was supported by the evidence, and our standard of review precludes us from disturbing that finding.

## II. The Issue of Traceability, as Provided in Section 44–53–520(a)(7) of the South Carolina Code

■ Petitioners argue that the court of appeals applied a totality of the circumstances test when determining whether the forfeiture complied with the traceability requirement of

section 44–53–320(a)(7), and that it erred in doing so. More specifically, Petitioners argue the court of appeals placed too much emphasis on the drug dog alert to find the money was traceable to illegal drug activity. We disagree.

In *Pope v. Gordon*, we addressed the standard to be applied to section 44–53–520(a)(7). 369 S.C. 469, 633 S.E.2d 148 (2006). In that case, the police seized the bank accounts of Gordon's carwash business, pursuant to a conviction for trafficking in crack cocaine. *Id.* at 473, 633 S.E.2d at 150. To draw the connection between the money seized and illegal transactions, the state presented evidence that Gordon paid for his monthly rent in cash, he failed to pay taxes for his business for the period in question, and that the portion of expenses that exceeded his business income was paid for in cash. *Id.* at 475, 633 S.E.2d at 152. In essence, Gordon's tendency to transact in cash was the state's primary argument that the money in the bank account was illegally gained. This Court affirmed the court of appeals' holding that the state failed to show probable cause that the money in the bank accounts was traceable to illegal drug transactions. *Id.* at 476, 633 S.E.2d at 152.

In that case, the State urged this Court to follow the rationale used in *United States v. Thomas*, where the United States Court of Appeals for the Fourth Circuit affirmed the government's seizure of property based on a totality of circumstances. 913 F.2d 1111 (4th Cir.1990). In *Thomas*, the Fourth Circuit found that "the possession of unusually large amounts of cash" was significant, and "may be circumstantial evidence of drug trafficking." *Id.* at 1115. The court further relied on the fact that the defendant's cash expenditures vastly exceeded his legitimate income, he made numerous one way trips to Miami, and that he had a history of convictions for possession of drugs. *Id.* at 1115–16. This Court declined to use the *Thomas* rationale, finding that a totality of the circumstances analysis lessened the burden on the state to prove a nexus, and that it was in direct contravention to the traceable language used in the statute. *Gordon*, 369 S.C. at 476, 633 S.E.2d at 152.

In *Thomas*, the Fourth Circuit held that probable cause in the context of forfeiture cases is the same standard

employed in search and seizure cases. *Thomas,* 913 F.2d at 1114. This requires the court to " 'make a practical, common-sense decision whether, given all the circumstances set forth . ... there is a fair probability' that the properties to be forfeited are proceeds of illegal drug transactions." *Id.* (*quoting Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). We agree there is a parallel between government seizure under the Fourth Amendment and government seizure in civil forfeiture cases. Therefore, in evaluating traceability, a court may weigh the evidence presented to draw its conclusion. What a court may not do, and what the State urged this Court to do in *Gordon,* is draw inferences based on evidence that is unrelated to the property being seized. Notably, in *Gordon,* this Court did not construe traceability so narrow as to require bills be marked or serial numbers be recorded. Neither did this Court require the State prove to an absolute certainty that the money in the bank account was a product of illegal drug transactions. Rather, in that case, this Court sought to prevent the State from confiscating legitimately owned property by presenting evidence that was unrelated to the property being seized. Our hesitancy in using a totality of the circumstances test for determining traceability derives from a concern that unrelated circumstantial evidence will become a substitute for real evidence that money or goods are products of illegal activity.

The concern that was present in *Gordon* is not present here. In this case, the court of appeals found that the probabilities, to the exclusion of all else, pointed to the conclusion that the money found in the safe was illegally gained. The courts below saw it significant that a large sum of cash was found hidden in a convicted drug dealer's bedroom, under his sole control, bundled in a way that is typical for drug transactions, and in close proximity to drug paraphernalia. The inferences made in *Gordon* need not be made here.

Furthermore, we disagree with Petitioners' contention that a drug dog's alert should bear no weight when evaluating traceability. Although many courts have questioned the probative value of dog alerts due to contamination of the nation's paper currency with drug residue, these courts have not completely disregarded it as a form of evidence. *See United States v. $78,850.00 in U.S. Currency,* 517 F.Supp.2d 792, 797

(D.S.C.2007) (declining to take a position on the probative value of a positive alert, but stating that, based on the alert, "it is more likely than not that the $433,890 was substantially related to a drug offense"); *United States v. Funds in the Amount of $30,670*, 403 F.3d 448 (7th Cir.2005) (considering expert testimony that " 'scientific results indicate that circulated currency, innocently contaminated with [microgram] quantities of cocaine would not cause a properly trained detection canine to signal an alert even if very large numbers of bills are present' "); *United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212, 1217 (9th Cir.2001) (stating a "sophisticated dog sniff" and "other factors" can "tip the scales in favor of establishing probable cause"). *But see United States v. One Lot of U.S. Currency ($36,634)*, 103 F.3d 1048, 1056 (1st Cir.1997) (finding that a dog reaction "weighs some, but not a great deal, on the scale").

While the drug dog's alert on the safe, standing alone, would not have proved the presence of drugs, the positive canine alert was a factor that the court of appeals rightly determined to be significant. Further, we note it is significant that the canine alerted on the safe and not the money. This fact alone distinguishes the case at hand from the cases cited above, and renders Petitioners' contamination theory questionable.

Thus, in our opinion, the State established there was probable cause to believe a substantial connection existed between the money contained in the safe and illegal drug activity, both because the money was found in close proximity to illegal drugs, and because the money was traceable to illegal transactions. Therefore, the court of appeals did not err.

### III. Innocent Ownership

Petitioners argue that in the event the State shows probable cause for seizing the money, Petitioners proved by a preponderance of the evidence that the money was innocently owned by Ms. Gibson. We disagree.

Ms. Gibson contends that this money is a product of both her life savings and the proceeds from illegal gambling. Petitioners only offered the testimony of Ms. Gibson and Bobby Gibson to support this contention. Ms. Gibson stated she worked for the same company for twenty-seven years making

$14.33 per hour. She testified that she sometimes worked sixty hour weeks, her house and car were paid in full, and her monthly bills and expenses were minimal. She insisted that she did not put this money in a bank because she lost money there in the past.

Discrediting her claim, Ms. Gibson did not know the combination to the safe, admitted that she could not reach the safe, and stated she always gave the money to her son to put in the safe. She then admitted that her son had been in prison for several years and had just recently been released. Ms. Gibson did not have tax returns or any other documents to support her claim of income.

The officers at the scene testified that Ms. Gibson looked surprised when she saw the money they were retrieving from the safe. When the officers told Ms. Gibson they would be confiscating the money, she did not make any claim to the money. Instead, the court did not hear of her claim to the money until she was added as a party shortly before the commencement of the trial. Taking Ms. Gibson's claim out of the equation, Petitioners offered no evidence that Bobby Gibson had an alternate income source that would support this accumulation of cash.

The circuit judge, after hearing the testimony and considering the above facts, concluded that Ms. Gibson's position in the matter is likely "fabricated rather than true." He additionally found that the "officers appeared credible to the Court at trial." This Court recognizes that the circuit judge "heard the witnesses, [and] is in a better position to evaluate their credibility and assign comparative weight to their testimony." *Reed v. Ozmint,* 374 S.C. 19, 24, 647 S.E.2d 209, 211 (2007). We will not disturb the circuit judge's finding that Petitioners' failed to meet their preponderance of the evidence burden, as this finding of fact was supported by a bounty of evidence.

Therefore, the court of appeals did not err in affirming the circuit court's finding that Petitioners failed to prove the money was innocently owned.

## CONCLUSION

For the above reasons, it is our view that the State established probable cause that a substantial connection existed

between the money confiscated from the safe and illegal activity because the money was both closely proximate and traceable to illegal drugs. Further, we agree that Petitioners did not meet their burden for proving that the money was innocently owned. Therefore, we affirm.

BEATTY, KITTREDGE and HEARN, JJ., concur.
PLEICONES, J., concurring in result only.