**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Paul Branco and Branco Investments, Inc., d/b/a Great American Cookie Co., Respondents,

v.

Hull Storey Retail Group, LLC and Sumter Mall, LLC, Appellants.

Appellate Case No. 2017-000998

———————

Appeal From Sumter County
R. Ferrell Cothran, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2021-UP-009
Submitted May 1, 2020 – Filed January 13, 2021

———————

**REVERSED**

———————

Miles Edward Coleman, of Nelson Mullins Riley & Scarborough, LLP, of Greenville and Matthew W. Matson, of Augusta, GA, for Appellant Hull Storey Retail Group, LLC, and Appellant Sumter Mall, LLC; and John M. Markwalter, of Augusta, GA, for Appellant Hull Storey Retail Group, LLC.

John S. Simmons, of Simmons Law Firm, LLC, of Columbia, and Patrick McFadden Killen, of McGowan

Hood & Felder, LLC, of Sumter, both for Respondents.

**PER CURIAM:** Appellants, Hull Storey Retail Group, LLC and Sumter Mall, LLC,[1] appeal from an order of the trial court finding in favor of Respondents, Paul Branco and Branco Investments, Inc. d/b/a Great American Cookie Co., on Respondents' claim of tortious interference with contract. Appellants contend the trial court erred in (1) ruling there was tortious interference with contract when Respondents failed to demonstrate the existence of a valid and enforceable contract; (2) ruling Hull Storey's actions relating to the contract were unjustified; (3) awarding damages in an amount unsupported by any competent evidence; and (4) awarding damages arising from a purported contract that was entered by a then-dissolved corporation that lacked the capacity to transact, or by awarding damages to Paul Branco individually, when he was not a party to the purported contract. Because we find there was not a valid, enforceable contract with which Appellants could have interfered, we reverse.

This case involves a leased space in Sumter Mall by Paul and Anne Branco for the operation of a Great American Cookie Company (GACC) franchise and the subsequent attempt to sell the assets of the business of Branco Investments, Inc. (Branco Investments), to another GACC franchisee, Brooktenn, LLC (Brooktenn), near the expiration of the lease.[2] After the deal with Brooktenn fell through, Respondents brought this action against Appellants asserting causes of action for breach of contract with fraudulent intent, tortious interference with contract, fraud, and constructive fraud. Appellants answered asserting, among other things, that Respondents' claims were barred, in whole or in part, by the Statute of Frauds; that they were barred "because certain conditions precedent were not met in order for its claims to ripen"; and that "no lease was entered between Brooktenn[] and Hull Storey []." Appellants also counterclaimed for breach of contract asserting that Respondents failed to vacate the premises at the end of the lease on April 30, 2013; did not pay rent after the lease ended; and failed to leave the property in "broom clean" condition as required by the lease. Following a February 28, 2017 bench trial, the trial court filed an order on March 23, 2017, in favor of Respondents on their tortious interference with contract claim, awarding them $63,625 after certain

---

[1] Hull Storey Retail Group, LLC (Hull Storey) managed leasing of available spaces on behalf of Sumter Mall, LLC (Sumter Mall).

[2] The parties and the trial court refer to Paul and Anne Branco and Branco Investments sometimes individually and sometimes interchangeably. For ease of reference in this opinion, we refer to them as Respondents in most instances.

set-offs.[3]  In anticipation of that order, Appellants filed a motion to amend the order under Rule 52(b), SCRCP, on March 21, 2017.  Subsequently, Appellants filed a notice of appeal with this court on April 21, 2017.  This court thereafter granted Appellants' motion to remand, holding the appeal in abeyance pending the trial court's resolution of Appellants' motion to amend.  Following a February 9, 2018 hearing on Appellants' motion to amend, the trial court filed an amended order of judgment on March 2, 2018, reaffirming its award of $63,625 to Respondents on their tortious interference with contract claim.

The record reveals as follows.  On March 1, 2013, Respondents and Brooktenn entered into an agreement titled "Proposal for Purchase" (the Agreement), which was divided into two parts, setting forth terms and a purchase price of $70,000 for the GACC store equipment and machinery in Sumter Mall and $30,000 for the same in another GACC store in Magnolia Mall in Florence.  The Agreement provided in regard to the Sumter Mall purchase, "This proposal is contingent upon [Brooktenn] getting a satisfactory lease from Hull Storey [] within 90 days of signed proposal."  Following various communications regarding Brooktenn possibly becoming tenants of the GACC store in Sumter, Appellants took the position that Respondents were attempting to assign their soon-to-expire lease with them to Brooktenn, which triggered a provision in the lease requiring Respondents to pay all consideration they received in connection with the assignment to the landlord.  Respondents maintained that the Agreement they entered with Brooktenn did not involve a lease assignment and, therefore, no consideration was owed under the provision.  Appellants continued to attempt to collect a fee— eventually settling on a price of $20,000—from either Respondents or Brooktenn.  Negotiations stalled and Brooktenn never entered into a lease agreement nor accepted a lease assignment for lease of the Sumter Mall space, which was a necessary condition to the Agreement between Respondents and Brooktenn.  Notably, Respondents presented evidence that, around the time Respondents' lease expired, a Hull Storey representative suggested to Brooktenn that Respondents would not be able to remove the equipment covered by the asset purchase agreement from the leased space and that Brooktenn could take over the store with the equipment still in it, pay Appellants $20,000, not pay Respondents the $70,000 pursuant to the Agreement, and come out of the deal $50,000 better.

After considering all the testimony, the trial court determined Respondents had a valid contract with Brooktenn for the sale of assets; Hull Storey had knowledge of

---

[3] The trial court found in favor of Appellants on Respondents' remaining claims, and no appeal has been taken in regard to those matters.

this contract; Hull Storey intentionally interfered with the Agreement resulting in the procurement of its breach; the interference was not justified; and as a result, Respondents were damaged by the lost opportunity to sell assets. While we certainly do not condone Appellants' tactics in this matter, we reluctantly agree with their argument that, based upon the contingency in the Agreement, Respondents failed to demonstrate the existence of a valid and enforceable contract that is necessary for a tortious interference with contract claim.

**Standard of Review**

"A tort action for damages is an action at law." *Santoro v. Schulthess*, 384 S.C. 250, 259, 681 S.E.2d 897, 901 (Ct. App. 2009). "In an action at law, tried without a jury, the appellate court standard of review extends only to the correction of errors of law." *Pope v. Gordon*, 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006). "The trial judge's findings of fact will not be disturbed on appeal unless the findings are wholly unsupported by the evidence or controlled by an erroneous conception of the application of the law." *Id.*

**Preservation of All Issues**

As an initial matter, Respondents, citing *Wallace v. Milliken & Co.*, 300 S.C. 553, 389 S.E.2d 448 (Ct. App. 1990), *aff'd as modified,* 305 S.C. 118, 406 S.E.2d 358 (1991), contend that none of the issues raised by Appellants on appeal are preserved because Appellants failed to renew what amounted to a Rule 41, SCRCP motion after they presented evidence. They argue that at the close of their evidence Appellants made a motion for a directed verdict, which is inapplicable to a matter tried without a jury, and our courts have recognized that the proper motion under such situation is an involuntary non-suit under Rule 41. After Appellants presented a witness in their case-in-chief, counsel failed to renew their motion. Thus, they argue Appellants waived the right for this court to review any and all arguments raised in this appeal.

In *Wallace*—a retaliatory discharge case in which the trial court found in favor of Wallace after a bench trial—this court stated as follows:

> We need not entertain Milliken's contention that the trial judge erred in not granting its motion for involuntary dismissal under Rule 41 of the South Carolina Rules of Civil Procedure and made at the close of Wallace's case. After the trial judge denied its motion, Milliken offered

evidence.  In doing so, Milliken waived its right to
question on appeal the trial judge's denial of its motion.

300 S.C. at 559, 389 S.E.2d at 451.  In so ruling, this court cited *Jones v. American Fidelity & Casualty Co.*, 210 S.C. 470, 43 S.E.2d 355 (1947) for the proposition that "an order erroneously denying a nonsuit will not be set aside where testimony thereafter introduced makes the case sufficient to be considered by the jury." However, this court still addressed Milliken's contention that the evidence was insufficient to support a finding of retaliatory discharge.  300 S.C. at 556, 389 S.E.2d at 450.  Thus, this court declined only to address the denial of the involuntary nonsuit on appeal, as such was waived by Milliken's offer of evidence.

Our Rules of Civil Procedure provide:

> When findings of fact are made in actions tried by the
> court without a jury, the question of the sufficiency of the
> evidence to support the findings may thereafter be raised
> whether or not the party raising the question has made in
> the trial court an objection to such findings or has made a
> motion to amend them or a motion for judgment.

Rule 52(b), SCRCP.

We find no merit to Respondents' argument in this regard.  *Wallace* stands for the proposition that a party waives the right, on appeal, to challenge a trial court's denial of a motion for involuntary dismissal under Rule 41, SCRCP, when the party thereafter introduces evidence.  Even assuming Appellants' motion for directed verdict was properly considered by the trial court as a motion for dismissal or involuntary non-suit under Rule 41, Appellants are not challenging the denial of this motion by the trial court on appeal.  As in *Wallace*, the Appellants here have the right to challenge the sufficiency of the evidence to support the trial court's findings.

**Preservation Specific to the Issue**

Respondents also challenge the preservation of this issue individually.  They assert Appellants' argument that the Statute of Frauds prohibited enforcement of the contract at issue was never raised prior to judgment and, thus, the issue is not preserved.  We disagree.

Arguably, even though the trial court did not specifically address Appellants' assertions concerning the Statute of Frauds, the issue is preserved as the trial court ruled Respondents had a "valid contract" with Brooktenn in spite of Appellants' argument to the contrary. The issue of unsatisfied contingencies and the failure of Brooktenn to enter into a lease with them was expressly raised to the trial court. At any rate, even if the specific argument concerning the Statute of Frauds was not ruled upon by the trial court, it is properly preserved because Appellants raised the Statute of Frauds in their answers, argued at trial that the contingency of the Agreement had not been met because Brooktenn had not entered into a lease with them, and again raised the requirement that a lease be in writing to be enforceable in their motion to amend. Thus, Appellants' stated issue on appeal encompasses the theory they raised to the trail court. *See Pye v. Estate of Fox*, 369 S.C. 555, 565, 633 S.E.2d 505, 510 (2006) ("Generally, an issue must be raised to and ruled upon by the [trial] court to be preserved. . . . However, an exception to this rule exists [when] an issue is raised but not ruled upon at a [motion to amend] hearing."); *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) ("A party *may* wish to file [a motion to amend] when she believes the court has misunderstood, failed to fully consider, or perhaps failed to rule on an argument or issue, and the party wishes for the court to reconsider or rule on it. A party *must* file such a motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review."); *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct. App. 2006) ("Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide us with a platform for meaningful appellate review."); *see also Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 333, 730 S.E.2d 282, 287 (2012) (Toal, C.J., concurring in result in part and dissenting in part) ("[When] the question of issue preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation.").

**Failure to Demonstrate a Valid and Enforceable Contract**

"The elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC*, 406 S.C. 596, 604, 753 S.E.2d 840, 844 (2012) (quoting *Camp v. Springs Mortg. Corp.*, 310 S.C. 514, 517, 426 S.E.2d 304, 305 (1993)). "The right to recover for the unlawful interference with the performance of a contract presupposes the existence of a valid, enforceable contract." *Jackson v. Bi-Lo Stores, Inc.*, 313 S.C. 272, 277, 437

S.E.2d 168, 171 (Ct. App. 1993). The Agreement between Branco Investments and Brooktenn was contingent upon Brooktenn obtaining a "satisfactory lease" from Appellants. As acknowledged by the trial court, Appellants had the right to place conditions on a lease to Brooktenn—such as that they be paid $20,000.[4] In fact, Appellants could have denied a lease to Brooktenn for no stated reason. Although there is evidence in the record that Brooktenn had been *approved* for a lease, there is nothing to show that the terms for any lease had been worked out between Appellants and Brooktenn. Further, the evidence indicates Appellants' approval of Brooktenn's lease application was contingent on the payment of $20,000, which did not occur. However, even assuming that testimony showed Brooktenn had been *approved* for a lease prior to the $20,000 claim being made such that approval was not contingent on the payment of the money, the record is nonetheless clear that Brooktenn never succeeded in "getting a satisfactory lease" from Appellants as required by the Agreement.

As argued by Appellants, the record is devoid of any written lease agreement entered into between Brooktenn and Appellants. *See* S.C. Code Ann. § 27-35-20 (2007) ("Any agreement for the use or occupation of real estate for more than one year shall be void unless in writing."); S.C. Code Ann. § 32-3-10 (2007) ("No action shall be brought whereby: . . . (4) To charge any person upon any contract or sale of lands, tenements or hereditaments or any interest in or concerning them . . . [u]nless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized."); *Player*

---

[4] The trial court recognized this in its oral ruling during the Appellants' Rule 52 motion. Specifically, the trial court noted that what changed this case for it was the testimony of the Brooktenn representative concerning Appellant's communication to him about taking over the GACC store with equipment Respondents would be unable to move, paying them the $20,000, and Brooktenn would then save $50,000. The court then stated as follows:

> [T]he problem with the whole thing was the $20,000 that your client kept insisting that it was an assignment. And that . . . was what threw the monkey wrench in the whole deal, *which I still think was fine. Your client had a right to argue that*, but it wasn't an assignment fee. *They could charge [] [Brooktenn] 20-more thousand dollars to lease it*. . . .

*v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 894 (1989) ("Any contract for an interest in land or any agreement that is not to be performed within one year must be in writing and signed by the party against whom it is seeking to be enforced."). Finally, the testimony makes clear that no lease for the Sumter Mall space was ever entered into between Brooktenn and Appellants. Because the Agreement was contingent upon Brooktenn "getting a satisfactory lease" and because no such lease was ever obtained, Respondents failed to meet the first element of "existence of a valid contract" with which Appellants could have interfered.

We find support for this in *Chitwood v. McMillan*, 189 S.C. 262, 1 S.E.2d 162 (1939). There, the state highway department awarded a contract to William F. Bowe, Jr. for certain road construction, with the contract including removal of buildings and structures from a right of way. *Id.* at ___, 1 S.E.2d at 162. Bowe then entered into a written agreement with A.B. Chitwood & Son—composed of A.B. Chitwood and his son, M.B. Chitwood—as subcontractors for this work. *Id.* Bowe thereafter sent A.B. Chitwood a letter instructing him it was necessary to enter into a new contract for the work and he would like to see A.B. Chitwood's son about the matter. *Id.* This letter also enclosed a letter sent to Bowe from C.R. McMillan, one of the highway department's engineers, stating that "[i]t will not be satisfactory for Mr. A.B. Chitwood to be connected with this project in any capacity," but it would be satisfactory for the son to do the work. *Id.* at ___, 1 S.E.2d at 162-63. A.B. Chitwood then brought an action against McMillan for unlawful interference with his contractual relations with Bowe, asserting McMillan's actions were actuated by personal malice toward him. *Id.* at ___, 1 S.E.2d at 163. McMillan raised in his defense that if there was such a contract with Bowe, the latter had no authority to enter into the same without first complying with requirements set forth in Bowe's contract with the highway department. *Id.* The contract between Bowe and the highway department provided "that the contract 'shall not be sublet, assigned, or otherwise disposed of, either in whole or in part, except with the written consent of the Chief Highway Commissioner,'" and that before such consent be requested, the contractor was required to "submit evidence that the party to whom it is proposed to make assignment is competent and responsible, together with a statement from the Surety Company concerned showing that the contract bond is authorized to cover all operations and obligations of the proposed assignee." *Id.*

The trial court granted McMillan a non-suit, finding "the subletting was never consented to by the [highway] [d]epartment and hence there was no valid existing contract with which [McMillan] could have interfered subjecting him to liability." *Id.* On appeal, our supreme court found A.B. Chitwood

offered no testimony either that the Chief Highway Commissioner had approved the sub-contract in writing or that Bowe had submitted satisfactory evidence of the competency and responsibility of A. B. Chitwood & Son, or that Bowe had filed a statement from his surety extending the bond coverage to A. B. Chitwood & Son. Nor did he offer to prove that these things would have been done but for the interference of the respondent.

*Id.* The court affirmed the trial court, holding as follows:

Before any question of liability for procuring a breach of contract arises, certain necessary factors and elements must appear—the first of which is the existence of a valid contract.

It was incumbent upon the appellant, before he could recover in this action, to show that the contract entered into between Bowe and A. B. Chitwood & Son, a partnership, was a valid and existing one, and this, in our opinion, he has failed to do because, admittedly, the validity of such a contract, or subletting, was conditioned and dependent upon the consent in writing of the Chief Highway Commissioner. It is conceded that this consent was never asked for nor given, nor were any of the prerequisites necessary for such consent furnished.

*Id.* at ___, 1 S.E.2d at 164.

Just as the contract allegedly interfered with in *Chitwood* was conditioned upon an action that never occurred, i.e., consent in writing from the highway department, so was the contract in the instant case conditioned upon an action that never occurred, i.e., Brooktenn securing a "satisfactory lease" from Appellants. Accordingly, as in *Chitwood*, Respondents failed to show the Agreement entered into between them and Brooktenn was a valid, enforceable one.

Plainly put, Respondents did not have a "valid, enforceable" contract in terms of an intentional interference with contract cause of action because it was conditioned upon Brooktenn obtaining a "satisfactory lease." *See Jackson*, 313 S.C. at 277, 437

S.E.2d at 171 ("The right to recover for the unlawful interference with the performance of a contract presupposes the existence of a valid, enforceable contract."). The Agreement was contingent upon Brooktenn entering into a lease with Appellants, Appellants had every right to refuse such a lease or place conditions upon the lease, and Brooktenn apparently found Appellants' lease terms unacceptable. Certainly, we find the testimony concerning Hull Storey encouraging Brooktenn to walk away from the Agreement with Respondents very troubling. As clearly recognized by Brooktenn, this appears to be an underhanded and deceitful way to conduct business. While these facts could, perhaps, support a cause of action for intentional interference with *prospective* contractual relations, based upon the contingency in the Agreement there simply was no valid, enforceable contract with which Appellants could have interfered to support a tortious interference with contract claim. *See Crandall Corp. v. Navistar Int'l Transp. Corp.*, 302 S.C. 265, 266, 395 S.E.2d 179, 180 (1990) (recognizing a cause of action for intentional interference with prospective contractual relations and noting in order to recover on such a cause of action "the plaintiff must prove: (1) the defendant intentionally interfered with the plaintiff's potential contractual relations; (2) for an improper purpose or by improper methods; (3) causing injury to the plaintiff"); *Santoro*, 384 S.C. at 263, 681 S.E.2d at 904 ("[A] cause of action for intentional interference with prospective contractual relations 'generally stands following the loss of an identifiable contract or expectation.'" (quoting *United Educ. Distrib., LLC*, 350 S.C. at 14, 564 S.E.2d at 328)). However, no action for intentional interference with prospective contractual relations was brought. Nor was such tried by consent. Therefore, it would be improper for this court to consider the same.

Because this issue is dispositive of the appeal, we need not address Appellants' remaining issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).

**REVERSED.**[5]

**HUFF, THOMAS and MCDONALD, JJ., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.